Mr. Justice Johnson
 

 delivered thé opinion of the Court.
 

 This case first came up on a difference of opinion certified from the Circuit Court of Alexandria, but the writ of error was dismissed, because that Court could not, in law, or the nature of things, certify such a difference to this Court.
 

 It
 
 has. since passed to a final decree, and although the sum on the record is small, a special permission to appeal has been granted ón cause shown ; it being a case affecting many others similarly situated.
 

 The question is, whether property offered for insurance, in which the' premium has not been paid, and which has been sold -without notice, remains liable for the premium in the hands of the vendee ?
 

 The case of the
 
 Mutual Assurance Society y. Executors of
 
 Watts, decided in February, 1816,
 
 a
 
 in this Court, is relied on as authority for maintaining the affirmative.
 

 It is to be regretted, that the case referred to had
 
 *607
 
 not been more fully reported. As it is not preceded by any statement of facts, abstracts of the history
 
 J J
 
 , , . . ’ '
 
 J
 
 and laws of this society, or the arguments of counsel, the insulated unexplained.opinion of. the Court, as it is printedj must be ever unintelligible to all de-script ions of readers, except those whose professional duties lead them to the study of the novel and extensive, institution whose interests ate involved in it.
 

 But there is enough exhibited, to show, that it affords no precedént for the claim set up in this case. It is true, that the Court occasionally uses the term premium, when speaking of the
 
 quota ;
 
 but in every instance it will be found to be used when reasoning upon the
 
 quota
 
 as the purchase money, in part of the right of the insured to compensation, which, by analogy to other cases of insurance, is in that sense denominated a
 
 premium.
 

 But there exists no analogy under the. laws of the company between the liability of property insured for a premium and a
 
 quota.
 

 The first is the sum paid down before the contract is entered info; the second, the occasional contribution exacted of individuals to make up the losses from time to time sustained. The 6th section of the act of December 22d, 1794, gives an express lien for the quota, and takes no notice of the premium, but as the rule for graduating the respective quotas. In the case alluded to, it was decided, that the lien thus created, had its origin in contract, although enforced by statute, and continued a mortgage on the premises, until vacated according to the provisions of the several laws which regulated the company.
 

 
 *608
 
 But the very reasons upon which that decision was placed* are fatal to the pretensions set up in this.
 

 There is no express lien created in any of the jaws tjje company! and there are no provisions in any of those laws from which it could be inferred, (if it were possible ever to infer a lien,) but those Which authorize a sale of land to satisfy the premium. But a right to sell the land is completely satisfied by subjecting it to such sale while in the hands of the first holder, and there are two of the by-laws of the company, which expressly negative every pretence for. carrying it any further. The first is the 8th section, 4th article, of the act of January 29th, 1805, which requires immediate payment of the premium upon the acceptance of the declaration, and the se-r cond is, the 6th section of the 5th article, which declares. that insurance shall not commence until the premium he paid.
 

 Decree affirmed.
 

 a
 

 1
 
 Wheat. Rep.
 
 279.